UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| Robert Williams<br><br>Plaintiff,<br><br>v.<br><br>Equifax Information Services, LLC;<br>Experian Information Solutions, Inc.<br><br>Defendants. | CASE NO. 4:23-cv-00094<br><br>COMPLAINT FOR DAMAGES:<br>1. Violation of Fair Credit Reporting Act; |

COMES NOW Plaintiff Robert Williams (hereinafter "Plaintiff"), an individual, based on information and belief, to allege as follows:

### **INTRODUCTION**

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(2)(A)), 15 U.S.C. § 1681i(a)(4)), and 15 U.S.C. §1681i(a)(5)(A)).

2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's account with Cashcall (hereinafter "Cashcall").

3. Here, Cashcall continues to report inaccurate and incomplete information regarding Plaintiff's account.

4. Cashcall's reporting of the account is wholly incomplete and misleading.

5. Specifically, Cashcall continues to report the account being past-due, charged-off, and lacking any indication that it was included and discharged in Plaintiff's chapter 7 bankruptcy.

6. The reporting by Cashcall, Experian, and Equifax makes it appear as though Cashcall's account is not subject to Plaintiff's chapter 7 bankruptcy dischrage.

7. Such reporting is misleading and adversely impacts Plaintiff's credit worthiness.

8. Plaintiff's credit has been damaged as a result of the inaccurate and misleading reporting and he has been unable to obtain favorable interest rates as a result of the reporting on his credit reports.

9. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

## JURISDICTION & VENUE

10. Plaintiff re-alleges and incorporates herein by reference the allegations in each and every paragraph above, fully set forth herein.

11. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

12. This venue is proper pursuant to 28 U.S.C. §1391(b)(1).

13. Plaintiff resides in the Eastern District of Missouri.

14. Defendant Equifax is a credit reporting agency that provides consumer information regarding consumers throughout the United States, including those located in Missouri.

15. Defendant Experian is a consumer protection agency that provides consumer information regarding consumers throughout the United States, including those located in Missouri.

## GENERAL ALLEGATIONS

**FICO, Inc.**

16. FICO is a leading analytics software company with its principal headquarters located in San Jose California.  FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

17. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.
18. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.
19. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.
20. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.
21. There are 28 FICO Scores that are commonly used by lenders.
22. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).
23. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Inc. and Transunion, LLC.
24. FICO does not control what information is provided on a consumer's credit report.
25. There are five key factors that a FICO Score considers: 1) Payment History, 2) Amount of Debt, 3) Length of Credit History 4) New Credit and 5) Credit Mix.
26. Each of the five factors is weighted differently by FICO.
27. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.
28. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score. Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

29. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

30. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

31. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

32. Timely mortgage payments are the most important payments a consumer can make to ensure a high FICO score.

**e-OSCAR**

33. E-OSCAR is the web-based Metro 2 compliant system developed by Experian Information Solutions, Inc.; Equifax Information Services, LLC; TransUnion, LLC and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

34. When a consumer sends a dispute letter to a CRA the CRA then sends an automated credit dispute verification (ACDV) via e-Oscar to the DF.

35. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file e.g. "Account Type" "07" (07 in Metro 2 refers to a Charge Account).

**Metro 2**

36. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

37. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.

38. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.

39. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.
40. The CDIA is *the* expert on accurate credit reporting. In support of his allegations Plaintiff avers the following:
    a. The CDIA offers a FCRA certificate program for all CRAs.
    b. The CDIA offers a FCRA awareness program for all CRAs.
    c. The CDIA offers a FCRA Certificate program for DFs.
    d. The CDIA offers a FCRA awareness program for DFs.
    e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.
    f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.
    g. The CDIA developed a credit reporting resource guide for accurately reporting credit.
41. The CDIA's Metro 2 is accepted by all CRAs.
42. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).
43. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.
44. The three main credit bureaus helped draft the CRRG.
45. The CRRG is not readily available to the public. It can be purchased online for $229.45.
46. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.
47. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.
48. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

49. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

**Consumer Information Indicator**

50. When a consumer files for bankruptcy protection certain credit reporting industry standards exist.
51. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.
52. The Consumer Information Indicator (CII) is a critical field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.
53. Under Metro 2 the CII must be reported only on the consumer to whom the information applies.
54. It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.
55. In the consumer bankruptcy context CII Metro 2 Code "A" denotes that a petition for Chapter 7 has been filed, is active, but no discharge has been entered.
56. The CII Metro 2 Code "Z" indicates that a bankruptcy petition has been filed but the chapter is undesignated/unknown.
57. The CII Metro 2 Code "D" denotes that a Chapter 13 bankruptcy is pending.
58. The CII field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.
59. Failure to update the CII to a "D" results in it appearing that a consumer, like Plaintiff, still owes on the account and that the account is not subject to a bankruptcy proceeding.
60. The result lowers a consumer's credit score and makes a consumer appear much less credit worthy.

**Plaintiff's Dispute**

61. On May 17, 2022 Plaintiff filed for chapter 7 bankruptcy protection. He received a chapter 7 discharge on August 10, 2022.

62. On September 12, 2022 Plaintiff ordered credit reports from Experian, Equifax, and TransUnion to ensure proper reporting by Plaintiff's creditors after entry of his discharge.
63. Plaintiff noticed a delinquent and adverse trade line on his September 12, 2022 credit report where Cashcall was reporting his account as charged-off with a past-due payment notation.
64. In addition, Cashcall failed to report that the account as included in bankruptcy.
65. In response, Plaintiff disputed the Cashcall trade line via certified mail with Experian, Equifax, and TransUnion in October of 2022.
66. Plaintiff's dispute letters specifically put Cashcall on notice that the account should not be listed as past-due and charged off and that the CII needed to be updated to "E" to report a discharged bankruptcy.
67. Plaintiff is informed and believes that each CRA received Plaintiff's dispute letter and in response sent Plaintiff's dispute to each DF via an ACDV through e-OSCAR.
68. On November 14, 2022 after the statutory time period had elapsed for Plaintiff to receive a reinvestigation report from the credit Bureaus, Plaintiff ordered a second credit report for the sole purpose to ensure Plaintiff's Cashcall account had in fact been updated.

**Inaccuracy – Cashcall**

69. Plaintiff was frustrated to see that Defendant Cashcall did not properly update the account.
70. Cashcall was still reporting the account as past-due and charged off without any reference to a discharged bankruptcy proceeding.
71. Cashcall's failure to update the account makes it appear as though the Cashcall account was not subject to Plaintiff's discharge.
72. There is no information regarding the Cashcall account that would inform potential lenders or anyone else viewing the credit report that the account was discharged and that Plaintiff is not required to make any payments on the account.

73. Cashcall's reporting is entirely incomplete, misleading and technically inaccurate.
74. The reporting is incomplete because the report lacks any information regarding the current status of the account.
75. Cashcall should have reported the CII "E" given entry of Plaintiff's discharge.
76. As it stands it appears that Plaintiff's account is not subject to the bankruptcy proceeding and that Cashcall is free to collect on the account.
77. Such reporting remains wholly incomplete and inaccurate.

**Willfulness**

78. This was not a negligent act by Defendant Cashcall but instead an intentional act to purposefully undermine Plaintiff's ability to effectively restore his credit.
79. Cashcall's reporting makes Plaintiff appear less credit worthy by nor reporting the account as included/discharged in bankruptcy and instead makes it appear that Plaintiff must pay Cashcall outside of any bankruptcy proceeding in order to remove the derogatory information.
80. Once Cashcall received Plaintiff's dispute rather than update the tradeline, Cashcall instead ignored the dispute and continued to report the inaccurate information.
81. Cashcall's reporting is objectively false, misleading, and inaccurate.
82. Such a scheme directly undermines the integrity of not only the bankruptcy court but also the integrity of the credit reporting system at large.

**Damages**

83. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, and emotional harm.
84. Plaintiff has been unable to obtain favorable interest rates and suffers from a diminished credit score given the inaccurate reporting by Cashcall.
85. Cashcall's inaccurate reporting negatively impacted Plaintiff's ability to obtain fair credit.

86. Plaintiff is also fearful that any additional credit applications will continue to harm his credit score and he will continue to receive unfavorable interest rates until the Cashcall tradeline is properly updated.

87. The actions of Experian and Equifax as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

### FIRST CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants)

**Experian Information Solutions, Inc., Equifax Information Services, LLC – Failure to Assure Credit Reporting Accuracy.**

88. Plaintiffs reallege and incorporate herein the allegations in each and every paragraph above as though fully set forth herein.

89. Experian and Equifax all violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

90. Had Experian and Equifax maintained reasonable procedures to assure maximum accuracy Experian and Equifax would never have allowed Cashcall to report the account as described herein.

91. Cashcall is not reporting the current and correct account information.

92. Experian and Equifax were all provided with information regarding Plaintiff's bankruptcy filing and subsequent discharge.

93. Even assuming the CRAs are not sophisticated enough to address this obvious contradiction, Plaintiff disputed the accounts and the CRAs still did not fix the issue.

94. Instead, the account remains unchanged.

95. As a result of Experian and Equifax's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

   **Willfulness**

96. The violations described herein by Experian and Equifax were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

97. In 2012 the FTC reported that 1 in 5 consumer credit reports contains a material error.

98. Such a finding should shock the conscience.

99. When those errors are disputed Experian and Equifax intentionally send consumer disputes to employees who do not live within the continental United States.

100. This is intentionally done to hide and or subvert a consumer's ability to confront individual directly responsible for approving accurate reporting.

101. Such a policy also inevitably leads to disputes going unresolved as these employees for Defendants Experian and Equifax receive little to know training concerning how to accurately report consumer debt.

102. Instead, these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that information is accurate. *See Saez v. Trans Union,* LLC, 621 F.Supp. 2d 1074, 1083, 1088 (D.Or. 2007); *Grigoryan v. Experian Info. Sols.*, Inc., 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014); *Haykuhi Avetisyan v. Experian Info Sols.*, No. CV 14-05276-AB (ASX)

103. Experian and Equifax employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.

104. Experian and Equifax have intentionally setup this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

105. Experian and Equifax also allowed Cashcall to report its accounts with inaccurate information despite specifically being told in the dispute letter why the information Experian and Equifax was reporting was incorrect.

106. Despite the CRAs having actual knowledge of Plaintiff's account status, Experian and Equifax continues to allow Cashcall to report the account as charged-off with a past-due balance owed rather than indicate it was discharged in bankruptcy.

107. Consequently, Defendants Experian and Equifax are liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

108. In the alternative, Experian and Equifax were at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

109. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**SECOND CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against Defendants)

**Experian and Equifax – Failure to Reinvestigate Disputed Information.**

110. Plaintiff re-alleges and incorporate herein the allegations in each and every paragraph above as though fully set forth herein.

111. After Plaintiff disputed the accounts mentioned above, Experian and Equifax were required to conduct a reasonable investigation and to delete any information that was not accurate under 15 USC 1681i-(a)1.

112. Experian and Equifax failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.

113. Experian and Equifax could not have possibly done any type of reasonable investigation into this matter as Plaintiff explicitly explained that the Cashcall account was subject to a chapter 7 bankruptcy discharge and indicated the specific CII that needed to be associated with the account.

114. Plaintiff alleges that Experian and Equifax each have its own independent duty to conduct a reasonable investigation 15 USC 1681i-(a)1.

115. Experian and Equifax are not passive entities bound to report whatever information a DF provides.

116. Given the aforementioned, Plaintiff alleges that Experian and Equifax can and do suppress inaccurate information from being reported when DFs provide inaccurate information.

117. Experian and Equifax can and do instruct DFs on how to properly report certain accounts from time to time upon request from the DF.

118. Experian and Equifax failed to conduct a reasonable investigation because any basic investigation would have included a review of Plaintiff's dispute letters.

119. Experian and Equifax intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that Experian and Equifax's general policy is to simply parrot whatever information a data furnisher sends.

120. Such policy and procedure inherently leads to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

### THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants)

**Experian and Equifax – Failure to Review and Consider All Relevant Information.**

121. Plaintiffs reallege and incorporate herein the allegations in each and every paragraph above as though fully set forth herein.

122. Experian and Equifax violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

123. As a result of Experian and Equifax's violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

124. The violations by Experian and Equifax were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

125. In the alternative Experian and Equifax were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

126. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**FOURTH CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants)

**Experian and Equifax– Failure to Delete Disputed and Inaccurate Information.**

127. Plaintiff re-allege and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

128. Experian and Equifax violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

129. As a result of Experian and Equifax's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

130. The violations by Experian and Equifax were willful, rendering it individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

131. In the alternative, Experian and Equifax were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

132. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury for all issues of fact triable by jury.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;
2. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;
3. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;
4. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o;
5. For determination by the Court that Defendants' policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and
6. For determination by the Court that Defendants' policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

**Gale, Angelo, Johnson, & Pruett, P.C.**

Dated: January 26, 2023

*/s/ Elliot Gale*
Elliot Gale (MO Bar #74455)
egale@gajplaw.com
Gale, Angelo, Johnson, & Pruett, P.C.
1430 Blue Oaks Blvd., Ste. 250
Roseville, CA 95747
916-290-7778 ph
916-721-2767 fax

Attorney for Plaintiff
Robert Williams